OSBERG CONSTRUCTION CO., a Washington corporation, and United Pacific Insurance Co., a Washington corporation, Plaintiffs,

v.

CITY OF THE DALLES, a municipal corporation organized and existing under the laws of the State of Oregon; John D. Skirving, Mayor of the City of The Dalles; and Walter Long, Donnelle Smith, William Tood, Ned Temple and Ray Matthews, Councilmen of the City of The Dalles, Defendants.

Civ. No. 67-526.

United States District Court
D. Oregon.
May 22, 1969.

R. W. Nahstoll, Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland, Or., for plaintiffs.

James K. Buell, Phillips, Coughlin, Buell & Phillips, Portland, Or., and Charles A. Phipps, Phipps, Phipps & Dunn, The Dalles, Or., for defendants.

## OPINION

KILKENNY, District Judge:

The plaintiff, Osberg Construction Company (Osberg), submitted, along with its bid on a contract to be let by the defendant, City of The Dalles (City), a bid bond in the sum of $24,998.75. According to the Information to Bidders ¶ 8 of the Contract Documents for the contract, that bond would be forfeited as liquidated damages in the event that the bidder was awarded the contract and failed to accept within 10 days. The City awarded the contract to Osberg based on Osberg's original bid, even though the latter notified the City of certain alleged mistakes in the preparation of the bid. When Osberg refused to execute the awarded contract, the City forfeited the bid bond.

In this suit, Osberg seeks a decree ordering the City to return the $24,998.-75 bid bond, restraining the City from any act directed toward realization on the bid bond, and costs. Jurisdiction is based on 28 U.S.C. § 1332.

The contract was to be let by the City for the construction of the Crow Creek Dam. The City's original project budget was $455,000.00 for the work and material covered by the contract. This was based on an estimate of independent engineers. In August, 1967, however, the City received a revised estimate which raised the amount to $655,520.00.

Osberg is a general contractor, resident in Seattle, Washington. At the time of the letting of the Crow Creek Contract, Osberg had just completed or was still working on sizeable projects in Oregon, Washington and Alaska. Bidding on the Crow Creek Project was handled for Osberg by John W. Osberg, the Company's Vice-President and Assistant Secretary. On August 30, 1967, along with other bidders, he toured the jobsite. The closing time for submitting bids or for modifying or withdrawing bids already submitted was 10:00 A.M., September 14, 1967, at The Dalles. This was also the time for the opening of the bids.

Osberg received an addendum to the contract documents, dated September 6, 1967, on the 7th or 8th of September, 1967. It was over the following weekend, on September 9th or 10th, that John Osberg prepared the Crow Creek bid. He

thinks he mailed it on September 11th, a Monday. Then, on the 14th, he "felt a restless apprehension" that he had neglected to provide for the contingency that the stream, which would have to be temporarily diverted, could not be channeled through a 30-inch concrete pipe which was to be a permanent part of the dam installation. At that time, he "realized" that the addition of a temporary diversion dam and a 48-inch pipeline would be necessary in order to safeguard against the danger of having the construction works washed out. His apprehension over flooding, he says, caused him to review his bid. In that review, he found what he classes as other errors: (1) Under item 2A1 (*Move In, Construct Temporary Facility*), that he had "extended" no figure for road construction; and (2) Under item 2D8 (*Rock Excavation of Spillway*) that he had similarly failed to "extend any figure" to cover the necessary drilling and shooting.

Osberg's original bid totaled $499,975.00. The bid of his next lowest competitor was $574,352.00, a difference of about $75,000.00. The third, fourth and fifth next lowest totaled $635,021.00, $682,035.00 and $687,662.50, respectively.

Osberg, upon discovering his alleged mistake, attempted to modify his bid before the bids were opened by sending a telegram to the Office of the Mayor, City of The Dalles, sent at 9:45 A.M. of the 14th. By that telegram, Osberg attempted to "raise Item 2A2 Divert and Care for Water one hundred thousand dollars raise item 2D8 Rock Excavation of Spillway .50 per cubic yard total bid increase one hundred twenty five thousand dollars". About 11:15 A.M. on that same day, Osberg telephoned the City Manager of The Dalles to the effect that the bid was erroneous and should be increased by $125,000.00.

The Contract Documents for the Crow Creek Dam provided that telegraphic modification (the only type allowed) could be effective only if:

" * * * such telegraphic communication is received by the Owner prior to the closing time, and, provided further,

the Owner is satisfied that a written confirmation of the telegraphic modification over the signature of the bidder was mailed prior to the closing time." *Id.* Information to Bidders, p. 2.

Osberg's telegram did not reach the defendant until 11:20 A.M. when The Dalles office of Western Union telephoned the telegraphic message to the secretary of the City Manager of the City of The Dalles. Thus, according to the announced rules governing the bidding, the attempted modification was technically too late.

The Contract Documents provided that bids could be withdrawn prior to the time for the opening. But, if not so withdrawn, the bidder would not be able to withdraw his bid any time "within thirty days of the actual date of opening thereof." Osberg's first attempt to withdraw his bid came in a letter dated September 18, 1967, asking that his bid be increased or, in the alternative, withdrawn.

The information for bidders in the Contract Documents made Osberg's offer irrevocable for the thirty days following September 14, 1967. By resolution of September 18, 1967, the City of The Dalles awarded Osberg the contract for the construction of the Crow Creek Dam, thus accepting that offer. When Osberg refused to execute the contract sent by City of The Dalles, the City claimed the $24,998.75 bid bond was forfeited according to the plain wording of the terms of the Contract Documents.

Plaintiffs concede the validity of the contractual provisions with reference to forfeiture, but would void those provisions by reason of alleged mistakes in fact on the submission of the bid. They rely chiefly on Rushlight Automatic Sprinkler Co. v. City of Portland, 189 Or. 194, 219 P.2d 732 (1950) and State Highway Commission v. State Construction Co., 203 Or. 414, 280 P.2d 370, 52 A.L.R. 2d 779 (1955). My problem is to decide whether mistakes of fact, rather than mistakes in judgment, were involved. To be kept in mind is the important fact that John W. Osberg toured the jobsite along with all of the other bidders prior

to the time he compiled the bid which was submitted by his company. I shall now deal with the claimed mistakes.

▓ The distinction between a mistake of fact and a mistake of judgment is well delineated in M. F. Kemper Construction Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d 7 (1951), where it is held that relief is refused for an error in judgment and allowed only for clerical or mathematical mistakes. In other words, mistakes in fact.

(1) Osberg claims that because of previous bad experiences with high water causing damage to Osberg's construction facilities on prior projects, he, after submission of the bid, had an "uneasy feeling" regarding the amount allotted to care and diversion of water in the Crow Creek bid. The amount allocated to this item in Osberg's original bid was $5,000.00. This was in line with the bid of Excavation, Inc., who eventually did the job (at $7,000.00), as well as with the engineer's revised estimate (at $5,000.00). Osberg's new figure, an increase of $33,000.00, plus 20%, for overhead and profit, he says, was necessary to construct a temporary dam and a 48-inch drain pipe for the contingency that the 30-inch pipe, a permanent part of the dam structure, could not handle the stream water. Osberg's new figure for this item, upwards of $40,000.00, except for one bidder whose figuring is totally unbalanced, was higher than any of the other bidders. It must be noted that the method of diversion was left entirely to the contractor and that the contractor who was awarded the Crow Creek job diverted the stream by ditching and use of the 30-inch pipe. Clearly, the plaintiffs did not make a mistake of fact on this item. The mistake, if any, was one of judgment.

(2) Osberg claims that he erred in that he had "extended" no figure for the cost of road construction. His original bid contained an allocation for this item (2A1) of $10,000.00. This was the lowest of all the bidders and $15,000.00 below the engineer's estimate. Osberg said that this covered only the cost of "move-in, move out and job shops", and did not provide for road construction. His new figure was $48,500.00, plus 20%, or $58,000.00. This new figure was high compared to the other bids.

Osberg's new figure provided for considerable road construction and graveling. The Special Specifications for Item 2A1 allowed the contractor discretion in this matter, requiring him only "to maintain the access road and bridges to the construction area as required for his operation. * * * After completion of the project, the road shall be returned to at least its original condition." Defendant contends that this was especially a matter of judgment since Osberg had intended, if it got the job, to cut "move-in" costs by moving its equipment to the Crow Creek site directly from a job then just being completed and could thereby cut the overall cost for 2A1. Moreover, the testimony of defendant's engineer was that the necessary access road improvement involved only 700 yards of gravel, at $3.50 per yard, rather than the 10,000 yards Osberg claimed was needed.

▓ Note also that Osberg did not fail to "extend" a figure for this added construction. As I understand the word, "extend" refers to the multiplying or dividing out of a set of figures. In this context, a failure to extend might be where a bidder considered 10 tons of steel necessary at $100.00 per ton, and then included only the figure $100.00 in his bid. This would be a clerical error, or an "oversight" as mentioned in *Rushlight*. I find there was no mistake of fact on this specification.

(3) Osberg claims that he failed to "extend" any figure to cover the drilling and shooting necessary for this Item (2D8). The Special Specifications for this item stated that payment would be made on a per unit cost for 50,000 cubic yards. Osberg's original bid figured this at $1.10 per cubic yard or a total of $55,000.00. This was $5,000.00 higher than the City Engineer's Estimate and also higher than six other bidders. The new figure Osberg claimed was an increase of $0.50 per cubic yard or a total of $25,-

000.00, plus 20%, or $30,000.00 more. This figure is very high. Clearly, there was no mistake of fact on this charge. For that matter, it would seem that the cost of drilling and shooting was overestimated by Osberg, rather than underestimated. Certainly, there was no failure "to extend" any of his figures.

■ A careful analysis of Rushlight Automatic Sprinkler Co. v. City of Portland, *supra*, and State Highway Commission v. State Construction Co., *supra*, demonstrates that neither of the cases is authority which will support plaintiffs' claims. We must keep in mind that the granting of equitable relief from the terms of a contract on the ground of the unilateral mistake is an extraordinary remedy. There must be some stability in the law which protects public agencies in connection with the award of bids to the lowest bidder. Otherwise, the advertising for bids would become a farce. The Courts should, and do, closely circumscribe the situations in which relief can be granted.

In both *Rushlight* and *State Construction Co.*, the contract-letting agency conceded that the contractor had made a mistake in the submission of the bid.

In *Rushlight*, the plaintiff's bid was in the sum of $429,444.20 and the next lowest of the four other bids was in the sum of $671,660.00, or approximately 55% greater than plaintiff's bid. After the opening of the bids, plaintiff discovered that it had not included charges for steel reinforcements necessary in each unit of the construction and so notified the City. The City refused to permit plaintiff to withdraw its bid.

The City freely admitted that plaintiff made a mistake, but contended that the mistake was due to the plaintiff's own negligent preparation. It was apparent in the bid itself that plaintiff had made a mistake. Moreover, the City officials knew, at the time of opening the bids, that a mistake had, in fact, been made. The Court then went on to say that "the material fact is that the omission of the steel was a substantial factor in reducing the bid to such a low amount that the city officials surmised that it was too good to be true."

In State Highway Commission v. State Construction Co., *supra*, the contractor submitted a bid totaling $172,699.00. The next lowest bid was $232,980.00, or approximately 35% greater. The City Engineers had estimated the probable cost of the construction of the piers under this contract at $240,030.00. After the bids were opened, the contractor reviewed his bid and found that it had not included the cost of the steel sheet piling, an absolutely essential part of the material. It was conceded that the cost of this material would be at least $35,000.00. The contractor attempted to increase the bid by $40,000.00 or withdraw his original bid. The Highway Commission conceded that the contractor had made an honest mistake, but, nevertheless, attempted to hold him to his bid.

The Court emphasized that the contractor had not been grossly negligent either in committing the error or in not sooner attempting to rectify it.

In *Rushlight* and *State Construction*, the cost of the material which was overlooked by the contractor was an absolute essential to each contract. In the case before me, there was nothing which was omitted by Mr. Osberg. He covered and "extended" the cost of all items, with the exception of items which were purely discretionary with him. We must remember that he was an expert in his field and that in the disputed areas he was relying on his own judgment, rather than requirements in the plans and specifications.

I have not overlooked the fact that Osberg's bid was some $75,000.00 less than the next lowest bidder and some $165,000.00 less than the Engineer's Revised Estimate. Here, however, we must keep in mind the Engineer's original estimate was $455,000.00, some $45,000.00 lower than Osberg's original bid.

Mr. Osberg, while on the witness stand, had great difficulty in attempting to clarify the alleged mistakes. The sum

total of his testimony points to nothing less than a thorough and complete analysis of the project on his original bid. After its submission, he started a re-survey and concluded that he was probably too low on some of the items. Such an afterthought is an everyday occurrence in the business world. I am personally convinced that Osberg was of the belief he could underbid the other bidders from thirty to forty thousand dollars on moving expense, since his machinery was already in the vicinity of Baker. Of great significance is the fact that this item—the only one of the three which is significantly less than the Engineer's Estimate and most of the other bids—was not even mentioned in the telegram of the day of bid opening.*

■ While I recognize that forfeitures are not favored by the law, Caine v. Powell, 185 Or. 322, 202 P.2d 931 (1949); Davis v. Wood, 200 Or. 602, 268 P.2d 371 (1954), I cannot overlook an exception to the rule, i. e. where parties under no disability contract for a forfeiture, it will be enforced. In such a situation, equity will afford no relief in the absence of mistake, fraud, or improper practice by the person seeking to impose it. Johnson v. Feskens, 146 Or. 657, 31 P.2d 667, 107 A.L.R. 340 (1934); Williams v. Barbee, 165 Or. 260, 106 P.2d 1033 (1940).

■ The validity of the bid requirements of the contract is not in question. For that matter, such requirements are not only indicated, but absolutely necessary to protect the integrity of the bidding process. Here, such requirements are clear and unmistakable and do not encroach on public policy. Inasmuch as there is no substantial evidence of a mistake, or other ground for relief, plaintiffs' complaint and this cause must be dismissed.

This opinion shall serve as my findings and conclusions.

---

* "Refer to our bid for construction of Crow Creek Dam. Raise Item 2A2 Divert and Care for Water one hundred thousand dollars raise Item 2D8 Rock Excavation of Spillway .50 per cubic yard total bid increase one hundred twenty five thousand dollars".