572 P.2d 1050 (1977)
31 Or.App. 1137
R.J. TAGGART, INC., an Oregon Corporation, Appellant,
v.
DOUGLAS COUNTY, a Municipal Corporation, Respondent.
Court of Appeals of Oregon, In Banc.[*]
Argued and Submitted May 16, 1977.
Resubmitted November 9, 1977.
Decided December 12, 1977.
*1051 James D. Vick, Salem, argued the cause and filed the briefs for appellant.
William L. Lasswell, Dist. Atty., Roseburg, argued the cause and filed the brief for respondent.
Resubmitted In Banc November 9, 1977.
LEE, Judge.
Plaintiff appeals from the circuit court's order requiring it to forfeit a $23,226 bid bond to defendant.
Early in 1974, defendant sought bids for a project involving "stockpiling crushed mineral aggregates in [the] Melrose Area [Melrose Project]." Plaintiff, a corporation engaged in construction work, evinced interest in the Melrose Project. As the project required the use of rock, Robert Taggart, the president of plaintiff who together with his wife own all of plaintiff's stock, asked the Douglas County Engineer where such rock was located in Douglas County. The engineer recommended a local source of rock known as the Handy Bar. Taggart visited the Handy Bar on March 12, 1974, and was told by one of the two owners of the Handy Bar that the rock was for sale but that the price of the rock could not be determined until the other owner had been consulted. Taggart drew up and signed an incomplete bid on the Melrose Project, and instructed his bookkeeper to obtain a price for the Handy Bar rock and to complete the bid accordingly. Taggart then left for a vacation.
*1052 On March 16, plaintiff's bookkeeper was told by the owners of the Handy Bar that the price for the rock would be approximately $1.25 per cubic yard. The bookkeeper completed the bid using that price and submitted it. Accompanying the bid was a bid bond of $23,226 which provided:
"NOW, THEREFORE, if the [Defendant] shall accept the bid of the [Plaintiff] and the [Plaintiff] shall enter into a Contract with the [Defendant] in accordance with the terms of such bid, and give such bond or bonds as may be specified in the bidding or Contract Documents with good and sufficient surety for the faithful performance of such Contract and for the prompt payment of labor and material furnished in the prosecution thereof, or in the event of the failure of the [Plaintiff] to enter such Contract and give such bond or bonds, if the [Plaintiff] shall pay to the [Defendant] the difference not to exceed the penalty hereof between the amount specified in said bid and such larger amount for which the [Defendant] may in good faith contract with another party to perform the Work covered by said bid, then this obligation shall be null and void, otherwise to remain in full force and effect."
On March 20, the bids on the Melrose Project were opened, with plaintiff's low bid of $232,260 being $116,540 lower than the next lowest bid. Later that day, Taggart's father learned that the Handy Bar rock was no longer for sale, and on March 21, the bookkeeper delivered a written written withdrawal of plaintiff's bid to defendant. On April 3, defendant awarded the contract to plaintiff. Plaintiff sued to relieve itself of any obligation pursuant to its bid, and alleged in part that since it had withdrawn its bid, "there never existed an agreement between [plaintiff] and the County." Defendant counter-claimed seeking forfeiture of the bid bond. The court denied plaintiff's request for equitable relief and ordered forfeiture of the bid bond.
In order for a contract to exist, the parties thereto must manifest a mutual intent to be bound, usually demonstrated by an offer, or in this case a bid, and acceptance. Phillips v. Johnson, 266 Or. 544, 555, 514 P.2d 1337 (1973). The general rule is that an offeree's power of acceptance may be terminated by revocation of the offer at any time prior to the acceptance of the offer. Hogan v. Alum. Lock Shingle Corp., 214 Or. 218, 226, 329 P.2d 271 (1958); Restatement of Contracts (Second) § 41, § 42. If an offeror undertakes to bind himself through the receipt of bargained for consideration to leave open an offer for a period of time, an option contract has been created and the offer is not revocable until the specified time passes. The common law rule had been statutorily modified in Oregon to eliminate the requirement of consideration for some such "firm offers" between merchants when the offer provides that it is irrevocable for a period of time, ORS 72.2050. It has been urged, see Keyes, Consideration Reconsidered  The Problem of the Withdrawn Bid, 10 Stan.L.Rev. 441 (1958), and held, if only by implication, that consideration is not necessary to make a bid on a public works contract irrevocable for a reasonable period of time. See M.F. Kemper Const. Co. v. City of L.A., 37 Cal.2d 696, 235 P.2d 7 (1951); Boise Junior College District v. Mattefs Const. Co., 92 Idaho 757, 450 P.2d 604 (1969). However, unless the parties agree that a bid is to be irrevocable for a period of time, or unless a relevant statute or municipal ordinance or rule specifically so provides, the general rule is that bids are freely revocable prior to acceptance.[1]See McQuillin, Municipal Corporations § 29.67 (1966).
*1053 Since defendant makes no contention that the form of plaintiff's withdrawal of its bid was not, in the abstract, an effective means of revocation, the question becomes whether plaintiff agreed to hold its bid open for acceptance until April 3, 1974. We find nothing either in the specifications for the bid, which were incorporated into plaintiff's bid, or in any other portion of the bid, or in the bid bond itself which bound plaintiff not to withdraw its bid. The only provision in the bid which could possibly be interpreted as binding plaintiff not to withdraw its bid provides:
"Whenever in these specifications and contract, the following terms are used, they shall be understood to have the meanings given herein.
"* * *
"`Standard Specifications'  The standard specifications which are applicable to these general provisions and the special and technical provisions herein contained and the performance thereof and the contract to be awarded are those titled Oregon State Highway Department Standard Specifications for Highway Construction (issue of 1970) hereinafter called the standard specifications except as the same may be modified, supplemented or superseded by the general, special and technical provisions herein contained. The contractor shall be bound to Douglas County by applicable provisions of the above specifications as he would be if each mention of State Highway Commission, Engineer therein were to read County, County Board of Commissioners or County Engineer, respectively." (Emphasis added.)
Sections 102.13[2] and 103.02[3] of the Oregon State Highway Department Standard Specifications appear to require that bids may not be withdrawn in the 30 days after all bids have been opened. However, reading the bid as a whole, it is clear that it was not intended that sections 102.13 and 103.02 apply to plaintiff's bid. First, the whole of the State Highway Department Standard Specifications is not made applicable to the bid; rather the bid calls for the state standards to be applied only when the phrase "standard specifications" is used. "Standard specifications" is not used in the portion of the bid describing the bidding procedure and bid bond requirements.[4] Second, the portion of the bid set forth above is definitional rather than operational in effect, and in itself imposes no obligations.
The only state statute which could conceivably have applicability here is ORS 279.031, which governs the bidding procedures for contracts with public bodies:
"Upon the execution of the contract and bond by the successful bidder, his bid security shall be returned to him. The bidder who has a contract awarded to him and who fails promptly and properly to execute the contract or bond shall forfeit the bid security that accompanied his bid. The bid security shall be taken and considered as liquidated damages and not as a penalty for failure of the bidder to execute the contract and bond. The bid security of unsuccessful bidders may be returned to them when the bids have been opened and the contract has been awarded, and shall not be retained by the public body after the contract has been duly signed."
*1054 We find nothing in the language of ORS 279.031 which requires that bids not be withdrawn after they have been opened but prior to the time they are accepted. Rather, ORS 279.031 applies only to the situation where a proper contract has been formed by the acceptance of an extant bid and where the successful bidder refuses to execute that contract. ORS 279.031 thus parallels the language in the bid bond set forth above. Our holding here is that by virtue of the effective withdrawal of the bid, no contract was ever formed. Further, the last sentence of ORS 279.031 only allows the return of the bid bonds of the unsuccessful bidders after the contract has been awarded. If ORS 279.031 was indeed designed to make bids irrevocable until they had been accepted, the protective aspects of the last sentence of ORS 279.031 would be unnecessary and it would be more likely that the statute would allow the return of the unsuccessful bidders' bonds after the opening of the bids.
We recognize that public bodies such as Douglas County may often have a strong interest in insuring that a low bidder not withdraw his bid between the time the bid is opened and the time it is accepted. Depending upon the nature of the bid, the public body may spend considerable amounts of money investigating the technical aspects of the bid and the bidder's qualifications to perform the job  money that possibly could not be recouped if the bid were withdrawn. However, this public policy concern does not require a blanket rule that all bids on public contracts are irrevocable prior to acceptance, for a less sweeping alternative is available. If the public body so chose, it could simply specify, either through regulation, ordinance, or in the actual bid specifications, that it would only consider bids which contain a provision that they be irrevocable for a period of time. The reliance by the public body on the bid would constitute whatever consideration is necessary for such a "firm offer" provision, see Restatement 2d, Contracts, § 90, and the required bid bond could specifically state that it would be forfeited if the bid was withdrawn.[5]
Accordingly, under the circumstances of this case, where defendant apparently did not detrimentally rely on plaintiff's bid before the bid was withdrawn, we conclude that plaintiff's withdrawal of its bid was effective, and that the Board of Commissioners' actions on April 3 did not bind plaintiff to either perform the work specified in the bid or forfeit its bid bond.
Reversed and remanded with instructions to enter an order consistent with this opinion.
JOHNSON, Judge, dissenting.
The majority opinion is premised on an untenable construction of the specifications, the bid bond and ORS 279.027 and ORS 279.031.[1]
We are here dealing with a public contract. Before construing the specifications and bond, it is necessary to consider the environment in which the parties were dealing. By statute, public contracts must be let by competitive bidding. See ORS 279.015. There must be a public advertisement for bids, ORS 279.025, followed by a public opening. ORS 279.027. The contract must be awarded to the "lowest responsible bidder." ORS 279.029.[2] Contractors can only *1055 be disqualified from bidding on specific objective grounds. See ORS 279.037.
The significance of this statutory scheme is that, unlike the private offeree who can accept or reject bids at will, the government offeree must open the bids publicly, ORS 279.027, and accept the lowest responsible bidder, ORS 279.029, or reject all bids. ORS 279.035.[3] Following the opening there is usually a lapse of time for the government agency to study the bids, and then an award is made. Following the award, the contractor and the government agency execute a written contract and the contractor delivers a performance bond for the full amount of the contract. ORS 279.029. Common sense dictates that under this scheme, following opening of the bids, bidders should not be allowed to freely withdraw their bids. Many jurisdictions, including the federal courts applying federal law to United States government contracts, have held as a matter of common law that the bid is irrevocable. Other jurisdictions have reached this result by reliance on statutes. The remaining jurisdictions have held that while the bid may be revocable, the bidder forfeits its bid bond or security deposit. See Keyes, Consideration Reconsidered  The Problem of the Withdrawn Bid, 10 Stan.L.Rev. 441, 442-43 (1958), and cases cited therein. Oregon law requires that the bid be accompanied by a security deposit or bid bond. ORS 279.027.
The majority suggests in Footnote 1 that there are no Oregon cases holding that the bid security required by ORS 279.027 is forfeited, citing Rushlight Co. v. City of Portland, 189 Or. 194, 219 P.2d 732 (1950). That ignores that in Rushlight and in Highway Com. v. State Construction Co., 203 Or. 414, 280 P.2d 370 (1955), the court held that equitable rescission for mistake and return of the bid security is an appropriate remedy in certain circumstances where the bidder on a public contract withdrew its bid before the award. In holding that the equitable remedy of rescission is available, the court sub silentio acknowledged bid security is otherwise forfeited.
THE BID SPECIFICATIONS
The bid specifications provide:
"Proposal Guaranty

"Each proposal shall be accompanied by cash, certified check, or bidder's bond made payable to Douglas County in the amount equal to 10% of the total amount of the proposal.
"The full amount of the proposal guaranty shall be forfeited in the event the successful bidder fails to execute a satisfactory contract within the ten (10) days following the date of notification by the Board of Commissioners that the contract is ready for his signature."
The majority construes this provision to mean that the forfeiture becomes operative only in the event the bid is not withdrawn and there is an acceptance. In other words, the deposit or "bidder's bond" required by the specifications becomes a performance bond rather than security for the bid. This is a strained construction. Performance bonds for public contracts are customarily for the full amount of the contract, not ten *1056 percent. See ORS 279.029(2)(b).[4] The specifications here make separate provision for a performance bond in the full amount.[5]
The fatal flaw in the specifications according to the majority is that they do not expressly state the bid is irrevocable. The answer is that the bid can be revoked at any time prior to execution of the contract, but such revocation requires forfeiture of the bid security. The majority's interpretation of the specifications results from an apparent misconception of how a public contract is made. The majority assumes a unilateral contract where the bidder makes an offer subsequently to be followed by an acceptance by the offeree county. To the contrary, the bidder makes a "proposal" for a contract. Following the opening the county reviews the bids and then notifies the lowest responsible bidder that he is to be awarded the contract. The announcement of the award does not consummate a contract. Rather following the announcement the parties then enter into a written bilateral contract which must be signed and accompanied by a performance bond. This is clear from the phrase in the specifications referring to the time "following the date of notification by the Board of Commissioners that the contract is ready for his signature." (Emphasis supplied.) This is likewise the process that is contemplated by ORS 279.029 which provides:
"(1) After the bids are opened as required by ORS 279.027, and after a determination is made that a contract is to be awarded, the public contracting agency shall award the contract to the lowest responsible bidder. * * *
"(2) The successful bidder shall:
"(a) Promptly execute a formal contract.
"(b) If the contract is for a public improvement, execute and deliver to the public contracting agency a good and sufficient bond * * * in a sum equal to the contract price for the faithful performance of the contract. * * *
"* * *"
Correspondingly the security deposit required by the specifications is not a performance bond, but a "proposal guaranty." It must be in cash, certified check or "bidder's bond," not a bond "for the faithful performance of the contract." The security must accompany the bid and is a "guaranty" that the "proposal" will remain open. If the bid is rejected, then it is implicit that the security must be returned to the bidder because there is no longer any need for the guaranty. It is forfeited, however, "in the event the successful bidder fails to execute a satisfactory contract within ten days following the date of notification by the Board of County Commissioners that the contract is ready for his signature." Douglas County Road Department Proposal and Specifications.
The "proposal guaranty" is a separate and distinct contract from the contract for the work. The bidder can withdraw, but in exchange he forfeits the security deposit. The consideration for the guaranty is that the county promises to consider the plaintiff's proposal and award the contract to plaintiff if it is the lowest responsible bidder. Even if there was not common law consideration, there is "consideration" by virtue of the express provisions of ORS 279.027 and ORS 279.031. This interpretation is not only compelled by the express language of the specifications, but was obviously contemplated by the parties. Appellant concedes in its complaint and on appeal, and for that matter in the bid bond, that the proposal guaranty was itself a contract. He is seeking equitable rescission of that contract, a question which the majority ignores and which I will address infra.

*1057 THE BID BOND
The majority quotes the conditions of defendant's bid bond, but ignores the operative provisions. The bond states that plaintiff Taggart and its surety:
"* * * are held and firmly bound unto Douglas County, Oregon as Obligee, hereinafter called the Obligee, in the sum of Ten Percent of amount bid the payment of which sum well and truly to be made, the said Principal and the said Surety, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents."
This is an unqualified promise to pay subject only to the conditions quoted by the majority that the bond shall no longer "remain in full force and effect" if (1) the county accepts the bid and Taggart executes a contract and performance bond, or (2) Taggart refuses to execute a contract and pays the damages owing to the county. There is no condition in the bond for the withdrawal of the bond. The bid bond is not a revocable offer but a contract to pay.

ORS 279.027 AND ORS 279.080
The majority states:
"We recognize that public bodies such as Douglas County may often have a strong interest in insuring that a low bidder not withdraw his bid between the time the bid is opened and the time it is accepted. Depending upon the nature of the bid, the public body may spend considerable amounts of money investigating the technical aspects of the bid and the bidder's qualifications to perform the job  money that possibly could not be recouped if the bid were withdrawn. However, this public policy concern does not require a blanket rule that all bids on public contracts are irrevocable prior to acceptance, for a less sweeping alternative is available. If the public body so chose, it could simply specify, either through regulation, ordinance, or in the actual bid specifications, that it would only consider bids which contain a provision that they be irrevocable for a period of time." At 1054.
While this reasoning may seem superficially plausible, it ignores the fact that the "proposal guaranty" specification is not a matter of county discretion, but is statutorily required. ORS 279.027(3) expressly requires that there be "bid security" on all public contracts:
"(3) A surety bond, cashier's check or certified check of the bidder shall be attached to all bids as bid security * *. Such security shall not exceed 10 percent of the amount bid for the contract." (Emphasis supplied.)
Disposition of that security is governed by ORS 279.031 which provides:
"Upon the execution of the contract and bond by the successful bidder, his bid security shall be returned to him. The bidder who has a contract awarded to him and who fails promptly and properly to execute the contract or bond shall forfeit the bid security that accompanied his bid. The bid security shall be taken and considered as liquidated damages and not as a penalty for failure of the bidder to execute the contract and bond. The bid security of unsuccessful bidders may be returned to them when the bids have been opened and the contract has been awarded, and shall not be retained by the public body after the contract has been duly signed."
The majority interprets ORS 279.031 to mean that the "bid security" only becomes operative when there is a contract; thus it is not security for bid, but a bond for the performance of the contract. The statutes make provision for a performance bond, ORS 279.029, which is separate and distinct from the provisions for bid security, ORS 279.027. The majority also ignores the express language of ORS 279.031, quoted above, that the bid security is liquidated damages for failure of the bidder to execute the contract, i.e., enter into the contract, and the provision that the bid security shall not be returned to bidders until a contract has been awarded and duly signed.

EQUITABLE RESCISSION
The only issue in this case as presented by plaintiff's complaint and assignment of *1058 error is whether plaintiff is entitled to equitable rescission. In Rushlight Co. v. City of Portland, supra, the plaintiff contractor submitted a bid of $429,444.20 for a public construction contract together with a bid deposit in the amount of $21,472.21. In computing the bid, the contractor inadvertently omitted an item for $99,225.68. The other bids were $671,600.00, $673,832.06, $684,891.50, and $1,217,799.60. The city's Board of Engineers had prior to the bid opening estimated the cost to be $632,000. The court reasoned that a bidder cannot have rescission or return of its bid deposit solely because of a unilateral mistake. But if the mistake is objectively manifested on the face of the bid so that the offeree should have knowledge that the offer is unintended, then the bidder is entitled to rescission. The court stated:
"When the City officials opened the plaintiff's bid they surmised that it was too good to be true. When they went through the form of accepting it, they knew that the paper in their hands did not represent the plaintiff's intent. They had no occasion to doubt the truth, which was apparent, that the paper, although it bore the plaintiff's signature, was not in fact the plaintiff's offer. When they adopted their resolution, no meeting of minds occurred. At that time the City had not changed its status quo and had suffered no damage whatever. To be denied the privilege of taking advantage of another's mistake is not to suffer damage. * * *" 189 Or. at 245, 219 P.2d at 753.
In the present case, while there was a discrepancy of $116,540 between plaintiff's bid and the next lowest bid, the county engineer's estimate was $259,000 as compared to plaintiff's bid of $232,260. Plaintiff's bid was not "too good to be true" and the county had no reason to believe it was not intended.
The facts in Highway Com. v. State Construction Co., supra, were substantially identical to Rushlight. The contractor inadvertently deleted an item in making his computation for the bid to the State Highway Commission. The bid was $172,699.00 as compared to the next lowest bid of $232,980.00 and the highway engineer's cost estimate of $240,030.00. The court allowed rescission and return of the deposit. The court held that "the facts in this case bring it squarely within the rules established * * by Rushlight." 203 Or. at 435, 280 P.2d at 380. However, the court went on to say as dictum:
"In the instant case the defendant Construction Company made a serious and substantial mistake in its bid; it was an honest mistake, and not one that was intentional nor one due to gross negligence or willful neglect; immediately upon discovering the error, defendant advised plaintiff thereof and sought to withdraw its bid. The bid had not then been accepted nor had the other bids been rejected. Plaintiff had in nowise changed its position because of the mistake. In everything it did defendant acted in good faith. It is manifest that it never intended to submit a bid without including therein the cost of the necessary steel sheet piling. When plaintiff assumed to accept the bid no meeting of the minds occurred. * * *" 203 Or. at 436-37, 280 P.2d at 381.
Plaintiff here, relying on the quoted language from State Construction, contends that its mistake was not the result of gross or willful neglect. On de novo review, I believe the evidence would justify a finding of gross or willful neglect. Plaintiff's conduct cannot conceivably be characterized as a mistake. Plaintiff had neither a legal nor moral commitment from the owners of Handy Bar to supply the rock at the price estimated in plaintiff's bid. Rather plaintiff's bid was premised on a gamble it would get the rock if it got the contract. After plaintiff learned that it was the low bidder, it attempted to realize on its gamble and the gamble did not pay off. Then plaintiff attempted to eliminate its loss by withdrawing the bid.
Equitable rescission is not intended to provide relief for the type of error, if any, committed here. It should be noted that both Rushlight and State Construction involved *1059 errors of a mechanical or clerical nature made in tabulating and transcribing figures for the bids. They were of a type "which will sometimes occur in the conduct of reasonable and cautious businessmen." Kemper Construction Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d 7 (1951). The California decision is the leading case on equitable rescission in public contracts. See 3 Corbin on Contracts, § 609 (1960). There the California Supreme Court made a distinction between "mechanical and clerical errors" and "errors of judgment, as, for example, underestimating the cost of labor or materials." The court stated:
"* * * There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. * * * Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. * * Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. * * *" 37 Cal.2d at 703, 235 P.2d at 11.
This same rationale was applied in Osberg Construction Co. v. City of The Dalles, 300 F. Supp. 442, 446 (D.Or. 1969), which was a diversity suit in which a contractor for the construction of a dam sought rescission of the bid security. After submitting the bid, the contractor "felt a restless apprehension" that he had neglected to provide for certain contingencies in preparing his bid. He attempted to withdraw the bid, but his notice of withdrawal was subsequent to the opening. The court, applying Oregon law, concluded that plaintiff's error was an error of judgment and thus equitable rescission would not lie. The court stated:
"* * * There must be some stability in the law which protects public agencies in connection with the award of bids to the lowest bidder. Otherwise, the advertising for bids would become a farce. The Courts should, and do, closely circumscribe the situations in which relief can be granted." 300 F. Supp. at 446.
Plaintiff's error was neither mechanical nor clerical and thus it was not entitled to equitable rescission. I respectfully dissent.
SCHWAB, C.J., and BUTTLER and JOSEPH, JJ., join in this dissent.
NOTES
[*] Gillette, J., did not participate.
[1] In Rushlight Co. v. City of Portland, 189 Or. 194, 219 P.2d 732 (1950), the Supreme Court discussed but did not decide whether bids could be withdrawn when no "firm offer" provision was made in the bid. The dissent suggests that since the Court in Rushlight decided the case on rescission-mistake analysis, it impliedly held that bids could not be withdrawn until they were accepted. The choice of one resolution on a particular issue which renders unnecessary resolution of any other issues in a case should not properly be read as impliedly resolving other issues.

The dissent also suggests that the common law rule is that bids may not be withdrawn prior to acceptance. We find no cases which support such a blanket proposition.
[2] Section 102.13 provides:

"Permission will not be given to modify or explain any proposal after it has been deposited with the State Highway Commission.
"A bidder may withdraw a proposal after it has been deposited with the [State] Highway Commission, provided the request for such withdrawal is received by the Commission before the time set for opening proposals."
[3] Section 103.02 provides:

"All proposals shall be submitted subject to acceptance and award of the contract within 30 days from the date of the opening of the proposals, and the bidder will not be bound for a longer period except by special agreement or except as otherwise provided in the special provisions. * * *"
[4] The phrase "standard specifications" is used only in the more technical aspects of the bid relating to the methods used to crush the rock.
[5] Contrary to the suggestion of the dissent, we do not hold that the bond submitted by Taggart is a performance bond. Rather, the bond is, by its terms and in operation and effect, a bid bond.
[1] This transaction occurred in 1974. In 1975 the legislature made a complete revision of the public contract laws and in particular ORS chapter 279. Oregon Laws 1975, ch. 771. Many of the provisions of chapter 279 were rewritten and renumbered. For purposes of this opinion, the former sections of chapter 279 are substantially identical to the present except for the statute number. Therefore I will refer to the present chapter 279 sections except where the context requires otherwise.
[2] ORS 279.029 was formerly ORS 279.075. The definition of "lowest responsible bidder" was made more specific in the new statute.
[3] The present ORS 279.035 provides:

"The public contracting agency may reject any bid not in compliance with all prescribed public bidding procedures and requirements, and may reject all bids if in the judgment of the agency it is in the public interest to do so. In any case where competitive bids are required and all bids are rejected, and the proposed contract is not abandoned, new bids may be called for as in the first instance.
There was no counterpart to this statute in former ORS chapter 279. The bid specifications state: "The Board of Commissioners reserves the right to reject any or all proposals, or accept the proposal deemed most satisfactory to the county." Although there was no express provision in the statute at that time comparable to ORS 279.035, former ORS 279.075 provided:
"(1) After the bids are opened as required by ORS 279.027, and after a determination is made that a contract is to be awarded, the public contracting agency shall award the contract to the lowest responsible bidder. * * *
"* * *"
It is questionable whether the provision in the bid specifications was permissible under the former law.
[4] Former ORS 279.075 required a performance bond "in a sum equal to not less than 50 percent of the contract price."
[5] The specifications provide:

"Surety Bond
"The Board of Commissioners will require a performance bond satisfactory and acceptable to them, in the amount of the contract."