JOHNSON, J.,
dissenting.
The majority opinion is premised on an untenable construction of the specifications, the bid bond and ORS 279.027 and 279.031. [1]
*[1145] We are here dealing with a public contract. Before construing the specifications and bond, it is necessary to consider the environment in which the parties were dealing. By statute, public contracts must be let by competitive bidding. See ORS 279.015. There must be a public advertisement for bids, ORS 279.025, followed by a public opening. ORS 279.027. The contract must be awarded to the "lowest responsible bidder.” ORS 279.029.[2] Contractors can only be disqualified from bidding on specific objective grounds. See ORS 279.037.
The significance of this statutory scheme is that, unlike the private offeree who can accept or reject bids at will, the government offeree must open the bids publicly, ORS 279.027, and accept the lowest responsible bidder, ORS 279.029, or reject all bids. ORS 279.035.[3] Following the opening there is usually a lapse of time for the government agency to study the bids, and then an award is made. Following the award, the contractor and the government agency execute a written contract and the contractor delivers a performance bond for the full amount of the contract. ORS *[1146] 279.029. Common sense dictates that under this scheme, following opening of the bids, bidders should not be allowed to freely withdraw their bids. Many jurisdictions, including the federal courts applying federal law to United States government contracts, have held as a matter of common law that the bid is irrevocable. Other jurisdictions have reached this result by reliance on statutes. The remaining jurisdictions have held that while the bid may be revocable, the bidder forfeits its bid bond or security deposit. See Keyes, Consideration Reconsidered — The Problem of the Withdrawn Bid, 10 Stan L Rev 441, 442-43 (1958), and cases cited therein. Oregon law requires that the bid be accompanied by a security deposit or bid bond. ORS 279.027.
The majority suggests in Footnote 1 that there are no Oregon cases holding that the bid security required by ORS 279.027 is forfeited, citing Rushlight Co. v. City of Portland, 189 Or 194, 219 P2d 732 (1950). That ignores that in Rushlight and in Highway Com. v. State Construction Co., 203 Or 414, 280 P2d 370 (1955), the court held that equitable rescission for mistake and return of the bid security is an appropriate remedy in certain circumstances where the bidder on a public contract withdrew its bid before the award. In holding that the equitable remedy of rescission is available, the court sub silentio acknowledged bid security is otherwise forfeited.
THE BID SPECIFICATIONS
The bid specifications provide:

"Proposal Guaranty

"Each proposal shall be accompanied by cash, certified check, or bidder’s bond made payable to Douglas County in the amount equal to 10% of the total amount of the proposal.
"The full amount of the proposal guaranty shall be forfeited in the event the successful bidder fails to execute a satisfactory contract within the ten (10) days following the date of notification by the Board of *[1147] Commissioners that the contract is ready for his signature.”
The majority construes this provision to mean that the forfeiture becomes operative only in the event the bid is not withdrawn and there is an acceptance. In other words, the deposit or "bidder’s bond” required by the specifications becomes a performance bond rather than security for the bid. This is a strained construction. Performance bonds for public contracts are customarily for the full amount of the contract, not ten percent. See ORS 279.029(2)(b).[4] The specifications here make separate provision for a performance bond in the full amount.[5]
The fatal flaw in the specifications according to the majority is that they do not expressly state the bid is irrevocable. The answer is that the bid can be revoked at any time prior to execution of the contract, but such revocation requires forfeiture of the bid security. The majority’s interpretation of the specifications results from an apparent misconception of how a public contract is made. The majority assumes a unilateral contract where the bidder makes an offer subsequently to be followed by an acceptance by the offeree county. To the contrary, the bidder makes a "proposal” for a contract. Following the opening the county reviews the bids and then notifies the lowest responsible bidder that he is to be awarded the contract. The announcement of the award does not consummate a contract. Rather following the announcement the parties then enter into a written bilateral contract which must be signed and accompanied by a performance bond. This is clear from the phrase in the specifications referring to the time "following the date of notification by the Board of Commissioners that the *[1148] contract is ready for his signature.” (Emphasis supplied.) This is likewise the process that is contemplated by ORS 279.029 which provides:
"(1) After the bids are opened as required by ORS 279.027, and after a determination is made that a contract is to be awarded, the public contracting agency shall award the contract to the lowest responsible bidder. * * *
"(2) The successful bidder shall:
"(a) Promptly execute a formal contract.
"(b) If the contract is for a public improvement, execute and deliver to the public contracting agency a good and sufficient bond * * * in a sum equal to the contract price for the faithful performance of the contract. * * *
:f: if: * *99
Correspondingly the security deposit required by the specifications is not a performance bond, but a "proposal guaranty.” It must be in cash, certified check or "bidder’s bond,” not a bond "for the faithful performance of the contract.” The security must accompany the bid and is a "guaranty” that the "proposal” will remain open. If the bid is rejected, then it is implicit that the security must be returned to the bidder because there is no longer any need for the guaranty. It is forfeited, however, "in the event the successful bidder fails to execute a satisfactory contract within ten days following the date of notification by the Board of County Commissioners that the contract is ready for his signature.” Douglas County Road Department Proposal and Specifications.
The "proposal guaranty” is a separate and distinct contract from the contract for the work. The bidder can withdraw, but in exchange he forfeits the security deposit. The consideration for the guaranty is that the county promises to consider the plaintiff’s proposal and award the contract to plaintiff if it is the lowest responsible bidder. Even if there was not common law consideration, there is "consideration” by virtue of the express provisions of ORS 279.027 and ORS 279.031. *[1149] This interpretation is not only compelled by the express language of the specifications, but was obviously contemplated by the parties. Appellant concedes in its complaint and on appeal, and for that matter in the bid bond, that the proposal guaranty was itself a contract. He is seeking equitable rescission of that contract, a question which the majority ignores and which I will address infra.
THE BID BOND
The majority quotes the conditions of defendant’s bid bond, but ignores the operative provisions. The bond states that plaintiff Taggart and its surety:
«* * * are hgjd md firmly bound unto Douglas County, Oregon as Obligee, hereinafter called the Obligee, in the sum of Ten Percent of amount bid the payment of which sum well and truly to be made, the said Principal and the said Surety, bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.”
This is an unqualified promise to pay subject only to the conditions quoted by the majority that the bond shall no longer "remain in full force and effect” if (1) the county accepts the bid and Taggart executes a contract and performance bond, or (2) Taggart refuses to execute a contract and pays the damages owing to the county. There is no condition in the bond for the withdrawal of the bond. The bid bond is not a revocable offer but a contract to pay.
ORS 279.027 AND ORS 279.080
The majority states:
"We recognize that public bodies such as Douglas Comity may often have a strong interest in insuring that a low bidder not withdraw his bid between the time the bid is opened and the time it is accepted. Depending upon the nature of the bid, the public body may spend considerable amounts of money investigating the technical aspects of the bid and the bidder’s qualifications to perform the job — money that possibly could not be recouped if the bid were withdrawn. However, this *[1150] public policy concern does not require a blanket rule that all bids on public contracts are irrevocable prior to acceptance, for a less sweeping alternative is available. If the public body so chose, it could simply specify, either through regulation, ordinance, or in the actual bid specifications, that it would only consider bids which contain a provision that they be irrevocable for a period of time.” 31 Or App at 1143-44.
While this reasoning may seem superficially plausible, it ignores the fact that the "proposal guaranty” specification is not a matter of county discretion, but is statutorily required. ORS 279.027(3) expressly requires that there be "bid security” on all public contracts:
"(3) A surety bond, cashier’s check or certified check of the bidder shall be attached to all bids as bid security * * *. Such security shall not exceed 10 percent of the amount bid for the contract.” (Emphasis supplied.)
Disposition of that security is governed by ORS 279.031 which provides:
"Upon the execution of the contract and bond by the successful bidder, his bid security shall be returned to him. The bidder who has a contract awarded to him and who fails promptly and properly to execute the contract or bond shall forfeit the bid security that accompanied his bid. The bid security shall be taken and considered as liquidated damages and not as a penalty for failure of the bidder to execute the contract and bond. The bid security of unsuccessful bidders may be returned to them when the bids have been opened and the contract has been awarded, and shall not be retained by the public body after the contract has been duly signed.”
The majority interprets ORS 279.031 to mean that the "bid security” only becomes operative when there is a contract; thus it is not security for bid, but a bond for the performance of the contract. The statutes make provision for a performance bond, ORS 279.029, which is separate and distinct from the provisions for bid security, ORS 279.027. The majority also ignores the express language of ORS 279.031, quoted above, that the bid security is liquidated damages for failure *[1151] of the bidder to execute the contract, i.e., enter into the contract, and the provision that the bid security shall not be returned to bidders until a contract has been awarded and duly signed.
EQUITABLE RESCISSION
The only issue in this case as presented by plaintiffs complaint and assignment of error is whether plaintiff is entitled to equitable rescission. In Rushlight Co. v. City of Portland, supra, the plaintiff contractor submitted a bid of $429,444.20 for a public construction contract together with a bid deposit in the amount of $21,472.21. In computing the bid, the contractor inadvertently omitted an item for $99,225.68. The other bids were $671,600.00, $673,832.06, $684,891.50, and $1,217,799.60. The city’s Board of Engineers had prior to the bid opening estimated the cost to be $632,000. The court reasoned that a bidder cannot have rescission or return of its bid deposit solely because of a unilateral mistake. But if the mistake is objectively manifested on the face of the bid so that the offeree should have knowledge that the offer is unintended, then the bidder is entitled to rescission. The court stated:
"When the City officials opened the plaintiffs bid they surmised that it was too good to be true. When they went through the form of accepting it, they knew that the paper in their hands did not represent the plaintiffs intent. They had no occasion to doubt the truth, which was apparent, that the paper, although it bore the plaintiffs signature, was not in fact the plaintiffs offer. When they adopted their resolution, no meeting of minds occurred. At that time the City had not changed its status quo and had suffered no damage whatever. To be denied the privilege of taking advantage of another’s mistake is not to suffer damage. * * *” 189 Or at 245.
In the present case, while there was a discrepancy of $116,540 between plaintiff’s bid and the next lowest bid, the county engineer’s estimate was $259,000 as compared to plaintiffs bid of $232,260. Plaintiffs bid *[1152] was not "too good to be true” and the county had no reason to believe it was not intended.
The facts in Highway Com. v. State Construction Co., supra, were substantially identical to Rushlight. The contractor inadvertently deleted an item in making his computation for the bid to the State Highway Commission. The bid was $172,699.00 as compared to the next lowest bid of $232,980.00 and the highway engineer’s cost estimate of $240,030.00. The court allowed rescission and return of the deposit. The court held that "the facts in this case bring it squarely within the rules established * * * by Rushlight.” 203 Or at 435. However, the court went on to say as dictum:
"In the instant case the defendant Construction Company made a serious and substantial mistake in its bid; it was an honest mistake, and not one that was intentional nor one due to gross negligence or willful neglect; immediately upon discovering the error, defendant advised plaintiff thereof and sought to withdraw its bid. The bid had not then been accepted nor had the other bids been rejected. Plaintiff had in nowise changed its position because of the mistake. In everything it did defendant acted in good faith. It is manifest that it never intended to submit a bid without including therein the cost of the necessary steel sheet piling. When plaintiff assumed to accept the bid no meeting of the minds occurred. * * *” 203 Or at 436-37.
Plaintiff here, relying on the quoted language from State Construction, contends that its mistake was not the result of gross or willful neglect. On de novo review, I believe the evidence would justify a finding of gross or willful neglect. Plaintiffs conduct cannot conceivably be characterized as a mistake. Plaintiff had neither a legal nor moral commitment from the owners of Handy Bar to supply the rock at the price estimated in plaintiffs bid. Rather plaintiff’s bid was premised on a gamble it would get the rock if it got the contract. After plaintiff learned that it was the low bidder, it attempted to realize on its gamble and the *[1153] gamble did not pay off. Then plaintiff attempted to eliminate its loss by withdrawing the bid.
Equitable rescission is not intended to provide relief for the type of error, if any, committed here. It should be noted that both Rushlight and State Construction involved errors of a mechanical or clerical nature made in tabulating and transcribing figures for the bids. They were of a type "which will sometimes occur in the conduct of reasonable and cautious businessmen.” Kemper Construction Co. v. City of Los Angeles, 37 Cal 2d 696, 235 P2d 7 (1951). The California decision is the leading case on equitable rescission in public contracts. See 3 Corbin on Contracts, § 609 (1960). There the California Supreme Court made a distinction between "mechanical and clerical errors” and "errors of judgment, as, for example, underestimating the cost of labor or materials.” The court stated:
«* * * There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. * * * Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. * * * Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. * * *” 37 Cal 2d at 703.
This same rationale was applied in Osberg Construction Co. v. City of The Dalles, 300 F Supp 442, 446 (D Or 1969), which was a diversity suit in which a contractor for the construction of a dam sought rescission of the bid security. After submitting the bid, the contractor "felt a restless apprehension” that he had neglected to provide for certain contingencies in preparing his bid. He attempted to withdraw the bid, but *[1154] his notice of withdrawal was subsequent to the opening. The court, applying Oregon law, concluded that plaintiffs error was an error of judgment and thus equitable rescission would not lie. The court stated:
"* * * There must be some stability in the law which protects public agencies in connection with the award of bids to the lowest bidder. Otherwise, the advertising for bids would become a farce. The Courts should, and do, closely circumscribe the situations in which relief can be granted.” 300 F Supp at 446.
Plaintiffs error was neither mechanical nor clerical and thus it was not entitled to equitable rescission. I respectfully dissent.
Schwab, Chief Judge, and Buttler and Joseph, Judges, join in this dissent.

This transaction occurred in 1974. In 1975 the legislature made a complete revision of the public contract laws and in particular ORS chapter 279. Oregon Laws 1975, ch 771. Many of the provisions of chapter 279 were rewritten and renumbered. For purposes of this opinion, the former sections of chapter 279 are substantially identical to the present except for the statute number. Therefore I will refer to the present chapter 279 sections except where the context requires otherwise.

ORS 279.029 was formerly ORS 279.075. The definition of "lowest responsible bidder” was made more specific in the new statute.

The present ORS 279.035 provides:
"The public contracting agency may reject any bid not in compliance with all prescribed public bidding procedures and requirements, and may reject all bids if in the judgment of the agency it is in the public interest to do so. In any case where competitive bids are required and all bids are rejected, and the proposed contract is not abandoned, new bids may be called for as in the first instance.”
There was not counterpart to this statute in former ORS chapter 279. The bid specifications state: "The Board of Commissioners reserves the right to reject any or all proposals, or accept the proposal deemed most satisfactory to the couniy.” Although there was no express provision in the statute at that time comparable to ORS 279.035, former ORS 279.075 provided:
"(1) After the bids are opened as required by ORS 279.070, and after a determination is made that a contract is to be awarded, the public officer shall award the contract to the lowest responsible bidder.
* * * *”
It is questionable whether the provision in the bid specifications-was permissible under the former law.

Former OES 279.075 required a performance bond "in a sum equal to not less than 50 percent of the contract price.”

 The specifications provide:

"Surety Bond

"The Board of Commissioners will require a performance bond satisfactory and acceptable to them, in the amount of the contract.”